DOWD, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | CASE NO. 5:05 CR 430 |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| ROBERTA D. DAVIDSON, | ) | |
| | ) | |
| Defendant(s). | ) | |
| | ) | |

The defendant stands convicted of two bank robberies in violation of 18 U.S.C § 2113(a) and (d) and the additional crime of the use of a firearm during a crime of violence in violation of 18 U.S.C. § 924 (c)(1)(A)(ii).  The two bank robberies took place on July 19, 2005 and August 8, 2005. In the first bank robbery, the defendant used a knife to intimidate the teller and in the second bank robbery, the defendant used a handgun.

The defendant is aged 40 and has been convicted multiple times so as to reach Criminal History VI.

The victim impact as a result of the bank robbery using the weapon is described in the pre-sentence report as follows:

> 10. To date, a statement from the victims of the defendant's robbery at Sky Bank on July 19, 2005 (Count 1), has not been received.  No one appears to have been hurt or injured as a result of this robbery.  However, restitution in the amount of $2,388, should be sent to the attention of Ray Harsh at Sky Bank, 39 South Main Street, Akron, Ohio 44308.  With regard to the robbery at Mechanics Savings Bank on August 8, 2005 (Count 2), Gary Baehr, Vice President of Mechanics Savings Bank, submitted the following written statement.

(5:05 CR 430)

11. "Our company, our employees and our customers have all been adversely impacted by this robbery. The impact to our company includes the stigma when a robbery is publicized in the area that could potentially imply a lack of safety and security at our bank to members of our community. We are a small, independently owned community bank. The public's perception of the safety and soundness of our institution is very important to our future success.

12. "One of our regular, long-time customers was present at the time of the robbery and assisted our employees in getting the robber's license plate number. The impact to that particular customer was significant in that he found himself in a dangerous situation and risked his own safety to assist us. Our customers at this branch indicated concern for several weeks after the event and needed to talk about it with the branch staff on a regular basis for some time. It clearly affected their perception of safety at this branch.

13. "Although our employees did everything properly during this event, the circumstances of having a very large and threatening person holding a gun on one of our Customer Service Representatives (CSR's), however, has had a significant and lasting impact on several of our employees. The CSR who was directly robbed was very upset and had to leave work that day after giving her statement to law enforcement. She was able to return to work in the same position, but has wanted to really not focus on the events of the bank robbery because it was so upsetting and frightening. Another CSR who was at the adjacent work-station was seriously traumatized and had to go to professional counseling to deal with the stress of witnessing the robbery. She was unable to function as a CSR for several weeks and had to be re-assigned to other duties. She is unable to return to the branch where the robbery took place. The robbery completely disrupted her work life, caused many sleepless nights and considerable stress.

14. "The direct victim of this crime and those who witnessed it have been severely impacted and personally violated by this person. For many years to come, circumstances may trigger memories of this incident and bring back the trauma and stress to our employees and to the customer who was involved.

15. "This was an aggressive, violent crime in which the feelings of safety and security in the workplace were shattered for our employees. The trauma of this event will stay with them for the rest of their lives."

The defendant's physical condition is described in paragraphs 66 and 67 as follows:

(5:05 CR 430)

> 66. Ms. Davidson has a number of physical problems. She reported she had a heart attack in 2002 and 2003, but stated that both heart attacks were mild. She was diagnosed with high blood pressure in 1990, and she is being prescribed Triamterene and Lotrel. She has had asthma for most of her life for which she is prescribed Albuterol, Xopenex, and Advair. In 2004 she was diagnosed with arthritis and takes Naprosyn for her pain. She also takes Omeprazole for his acid reflux disease and diverticulitis. All of these drugs are currently being prescribed by Dr. Sam Ghoubrial at the Medina County Jail. None of these medications are causing negative side effects for Ms. Davidson.
>
> 67. Additionally, in 1999, the defendant had a tumor removed, and she has had a total of nine surgeries to repair hernias between 1995 and 2003.

The defendant's mental and emotional health is described in paragraph 68:

> 68. In 1993, Ms. Davidson was diagnosed with depression at the health department in Mansfield, Ohio. She believed she had postpartum depression after the birth of her second child. She said she went to mental health counseling at the Mansfield Rehabilitation Center for about one year. During that time, she was prescribed Risperdal and Paxil for her depression. At the end of that year, however, she stopped taking the medication because she felt that her depression had ended. In 2003, Ms. Davidson was separated from her husband and began to have more health problems. As a result, her depression began to creep back into her life. In 2004 she began to hear voices calling her name and background chatter as if she were in a crowded room. Because she continues to experience depression and hear voices, Mr. Davidson has been prescribed Risperdal and Paxil by Dr. R. Brar at the Medina County Jail.

The defendant's history of substance abuse is set forth in paragraphs 69 and 70:

> 69. The defendant begin experimenting with marijuana when she was 12 years old. She most recently smoked marijuana prior to her arrest for the instant case at the rate of two marijuana cigarettes per day. Since about 2004, Ms. Davidson was adding powder cocaine to each of her marijuana cigarettes. When she was 14 years old, Ms. Davidson tried LSD and amphetamines only one time. She said she experimented with crack cocaine once when she was 22 years old. In 2004, the defendant began consuming between 3 and 6 Percocet pills per day. In 2005, she began using methamphetamine until her arrest. She commented it was not unusual for her to stay awake for three days at a time when she was using methamphetamine.

(5:05 CR 430)

> 70. With regard to alcohol, Ms. Davidson reported she began drinking when she was 10 years old. She said she most recently drank about six to twelve beers per day. From age 23 to 24, she drank a bottle of whiskey daily in addition to consumption of beer. Ms. Davidson believes she is addicted to alcohol, Percocet, marijuana, and methamphetamine.

The defendant represents a very sad case and suggests recidivism is a way of life. The advisory guideline sentence is 100 to 125 months and the court must then add a consecutive sentence of seven years or 84 months to whatever sentence is set for the two bank robberies. The court is of the view that a long sentence may add years to defendant's life after considering the state of her physical condition, her mental and emotional health and her long history of substance abuse.

The court has considered the sentencing factors set forth in 18 U.S.C. § 3533(a) and concludes that it should not vary from the advisory guideline range of 100-125 months. However, the court concludes that a sentence of 100 months for the two bank robberies and a consecutive sentence of 84 months for the use of the firearm in the second bank robbery, for a total of 184 months, is an appropriate sentence in this case. The defendant will, in all likelihood, be released from prison when she is either 53 or 54 and hopefully her physical, mental and emotional condition will have improved; she will have been free of substance abuse for years, and she will have the opportunity to spend the remaining years of her life in a law-abiding setting.

IT IS SO ORDERED.

| | |
|---|---|
| 12/20/05 | s/David D. Dowd, Jr. |
| Date | David D. Dowd, Jr.<br>U.S. District Judge |